UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| MICHELLE KERSTETTER, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| v. | ) | Case No. 13-CV-0342-CVE-FHM |
|  | ) |  |
| CAROLYN W. COLVIN, Acting Commissioner, | ) |  |
| Social Security Administration, | ) |  |
|  | ) |  |
| Defendant. | ) |  |

## OPINION AND ORDER

Now before the Court is the report and recommendation, Dkt. # 25, of Magistrate Judge Frank H. McCarthy recommending that the Court affirm the decision of the Commissioner of the Social Security Administration to deny plaintiff's claim for disability benefits. Plaintiff Michelle Kerstetter has filed an objection, Dkt. # 28, to the report and recommendation; she asks the Court to award benefits or remand the case for further proceedings. Defendant has not filed a response to plaintiff's objection to the report and recommendation, and the time to respond has expired.

I.

On January 15, 2010, plaintiff applied for disability benefits, alleging that she was unable to work as of December 1, 2009. Dkt. # 14-5, at 2. Plaintiff alleges that a physical condition, an injury to her right shoulder preventing full use of the joint and arm, and psychological conditions, including bipolar disorder and anxiety, have rendered her unable to work. Dkt. #14-4, at 2. Plaintiff's application was denied initially on July 20, 2010, and after reconsideration it was denied again on January 12, 2011. Id. at 15. Plaintiff requested a hearing before an administrative law judge (ALJ), and that hearing was held on November 17, 2011. Dkt. # 14-2, at 40.

Plaintiff appeared at the hearing and was represented by an attorney. Id. Plaintiff was forty-one years old on the date of the hearing; she was thirty-nine years old at the time of the alleged onset of disability. Id. at 47, 50. Plaintiff lives with her mother, father, and son. Id. at 49. She helps with indoor household chores, such as laundry and cleaning. Id. at 56. During the day, plaintiff reads novels, listens to music, watches television, and visits her nearby family. Id. at 57-58. She has a driver's license and drives locally three times a week, but she asks others to drive if she needs to travel a longer distance. Id. at 48. Plaintiff completed high school in 1989, and she had some vocational training that concluded in 1990. Id. at 47-48. She had previous work experience as a pottery designer, a cashier, a manager of a charity retail store, and a commercial cleaner. Id. at 77. Plaintiff was not employed at the time of the hearing and had not been employed since 2009. Id. at 67. However, she had received unemployment benefits through the third quarter of 2010, id. at 51, and she received food stamps at the time of the hearing. Id. at 53.

Plaintiff had both physical and psychological conditions that, she argued, made her disabled. In 2008, plaintiff fell and struck her right shoulder, resulting in difficulty moving the shoulder and arm. Dkt. # 14-7, at 59. The injury requires her to ask for help with certain regular activities, including washing her hair. Dkt. # 14-2, at 56. At a physical consultative examination on April 9, 2010, Corey R. Babb, D.O., examined plaintiff and found her right shoulder joint "limited due to pain" for all types of movement that he measured. Dkt. # 14-7, at 51, 53. He rated her non-dominant right hand grip strength at only 2/5, with 5/5 being full strength. Id. at 51. However, he noted that she could manipulate small objects without difficulty and could hold a hammer with her dominant left hand. Id. at 54. He described no other physical difficulties.

2

Plaintiff also suffers from several psychological conditions. She experiences depression and feelings of hopelessness four out of five days, id. at 69, and she feels severe anxiety when she leaves the house or when there is excessive noise. Id. at 70-71. She has difficulty remaining focused on one activity, like watching television or holding a conversation, for long periods. Id. at 72-73. She reported occasional hallucinations, seeing silhouettes and hearing the voices of strangers. Dkt. # 14-2, at 74. William T. Bryant, Ph.D., conducted a psychological consultative examination of plaintiff, and he concluded that plaintiff "has Bipolar Disorder (Depressed type), with significant anxiety, in partial remission ...." Dkt. # 14-7, at 62. While some of these psychological issues had existed for years at a low level, plaintiff testified that they became overwhelming after she was arrested and briefly jailed in 2009 for possession of methamphetamine. Dkt. # 14-2, at 68. Plaintiff, who began using methamphetamine because she felt it "gave [her] an upper hand," received a deferred five year sentence with probation. Id. at 50. The date of arrest and alleged date of onset of disability coincide, and when asked if being in jail after her arrest had made her disabled plaintiff replied, "It does in my mind." Id. at 51. She began mental health treatment in 2009, and she takes medication to control her symptoms. Id. at 62-63.

The ALJ called vocational expert (VE) Melissa Brassfield, M.S. in Rehabilitation Counseling, to testify about plaintiff's ability to work. Brassfield testified that plaintiff's work history ranged from the sedentary to heavy exertional categories with specific vocational preparation (SVP) levels ranging from two to seven. Id. at 77. The ALJ posed a series of hypothetical questions to the VE, asking whether jobs existed in the national economy that would allow the hypothetical

3

person in the question to work. Id. at 77-83. Following the first hypothetical question,[1] the VE testified that the hypothetical person would not be able to perform plaintiff's past work, but there were occupations at the light and sedentary exertion levels in sufficient numbers in the national and regional economies. Id. at 79-80. When the ALJ added additional parameters, including limitations to lifting, walking, sitting, standing, and posture, the VE stated that the sedentary exertion occupations previously identified would still be available but the light exertion occupations would not. Id. at 81-21. However, the addition of either a limitation on the ability to use both hands frequently or a requirement of close supervision would eliminate all occupations. Id. at 82-83. So too would the need to be late or absent one day a week. Id. at 83-84.

On February 2, 2012, the ALJ issued a written decision denying plaintiff's claim for disability benefits. Id. at 32. Plaintiff had sufficient coverage to remain insured through June 30, 2013, and she alleged onset of disability on December 1, 2009. Id. at 19. The ALJ found that

---

[1] The first question asked the VE to assume the following hypothetical person:
Assume an individual ... 39 years of age in December of '09, currently 40 ... assume high school education, assume for a moment the past work you described today .... Assume in the first circumstance ... we're limited to light work or sedentary work only, assume even then no climbing of ropes, ladders, scaffolds, unprotected heights and dangerous machinery parts, assume overhead reaching limited to an occasional basis only with the non-dominant or right extremity, assume with respect to grasping larger objects like a hammer ... assume the same would be an occasional basis only with the right or non-dominant extremity, assume that fingering, handling would be permitted, assume repetitive tasks for a moment in this first scenario would be permitted, assume simple instructions only in a work related setting and to assume interaction with co-workers and supervisors would permit routine supervision ... assume interaction with the public only occasionally. Assume it doesn't make any difference whether that's a person or over the telephone, this interaction with the public. Assume symptoms from many varieties of sources this could be depression, could be anxiety, could be intermittent pain or fatigue, ... assume of sufficient severity so as to be noticeable to that person at all times, yet enable to remain attentive and responsive and perform work assignments within the above limits ....
Dkt. # 14-2, at 78-79.

plaintiff had the severe impairments of "status-post right shoulder injury, depression, bipolar disorder, anxiety and substance abuse disorder." Id. at 21. However, these impairments did not equal or exceed the impairments listed in 20 C.F.R., Part 404, Subpart P, Appendix 1. Id. at 22. In making this finding, the ALJ considered whether plaintiff's psychological impairments met the "paragraph B" criteria: he determined that plaintiff had no episodes of decompensation; mild to moderate difficulties in activities of daily living; and moderate difficulties in both social functioning and concentration, persistence, or pace. Id. The ALJ also considered, and then rejected, the possibility that plaintiff's impairments met the "paragraph C" criteria. Id. at 23.

Next, the ALJ formulated plaintiff's residual functional capacity (RFC), taking into account the medical evidence and testimony. He found that plaintiff could "perform a full range of light and sedentary exertion work" with the following functional parameters: limited overhead reaching with the right arm; limited grip strength in the right hand; able to "understand, remember, and carry out simple instructions;" routine supervision; only occasional interaction with the general public; and "moderate chronic intermittent pain and fatigue" that would be continuously noticeable but would not preclude attentive performance. Id. at 23-24. The ALJ discussed in detail the findings of the physical and psychological consultative examinations, particularly with respect to the psychological conditions that plaintiff reported to each physician. Id. at 26-27. He also credited plaintiff's mother's report of plaintiff's ability to function as tending to support the RFC, except to the extent the report "describes greater limitations in some areas than are reflected in medical treatment." Id. at 29. Similarly, he gave great weight to the opinions of the medical consultants from Oklahoma Disability Determination Services (DDS) with regard to the lifting, sitting, and standing limitations they

suggested, but he gave little weight to the remainder of their opinions because the medical evidence supported greater limitations. Id.

For the most part, the ALJ did not credit plaintiff's statements. The ALJ determined that plaintiff's impairments, demonstrated through the medical evidence, could cause her alleged symptoms, but he found her statements about the "intensity, persistence, and limiting effects of these symptoms ... not credible to the extent they are inconsistent with [the RFC]." Id. at 24-25. Citing extensively to the consultative examinations and plaintiff's medical records, the ALJ wrote that "[t]here is virtually no medical evidence to support [plaintiff's] allegations of a physical impairment as of the alleged onset date." Id. at 26. With regard to plaintiff's psychological issues, the ALJ reviewed plaintiff's mental health records and found that they "fail to reflect the level of anxiety or hopelessness about which claimant testified." Id. at 27. He also noted that plaintiff's inconsistent statements regarding the methamphetamine found in her car, id. at 26, and about her methamphetamine use in general, id. at 28, made her testimony in that area not credible. Likewise, her claims of a sustained work history were not substantiated by her documented earnings, and as a result "[plaintiff's] work history does not add to her credibility." Id. at 28.

Based on the RFC, the ALJ determined that plaintiff could not perform her past work. Id. at 30. The ALJ credited the testimony of the VE, finding that there were sufficient jobs in the national economy for someone with plaintiff's RFC, age, education, and experience. Id. at 31. Specifically, the ALJ identified housekeeping cleaner, bottling line attendant, touch-up screener, and rotor assembler as possible occupations for plaintiff. On that basis, he concluded that plaintiff was not disabled and denied her request for benefits. Id. at 32.

On April 16, 2013, the Appeals Council found no basis to review the ALJ's decision, making the ALJ's decision the final decision of the Commissioner. Id. at 2. Plaintiff sought federal judicial review of her case, and the matter was referred to a magistrate judge for a report and recommendation. The magistrate judge recommends this Court affirm the Commissioner's decision, and plaintiff has filed an objection to the report and recommendation. Dkt. ## 25, 28.

**II.**

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation within fourteen days of service of the recommendation. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

**III.**

The Social Security Administration has established a five-step process to review claims for disability benefits. See 20 C.F.R. § 404.1520. The Tenth Circuit has outlined the five step process:

> Step one requires the agency to determine whether a claimant is "presently engaged in substantial gainful activity." [Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004)]. If not, the agency proceeds to consider, at step two, whether a claimant has "a medically severe impairment or impairments." *Id*. An impairment is severe under the applicable regulations if it significantly limits a claimant's physical or mental ability to perform basic work activities. *See* 20 C.F.R. § 404.1521. At step three, the ALJ considers whether a claimant's medically severe impairments are equivalent to a condition "listed in the appendix of the relevant disability regulation." *Allen*, 357 F.3d at 1142. If a claimant's impairments are not equivalent to a listed impairment, the ALJ must consider, at step four, whether a claimant's impairments prevent her from performing her past relevant work. *See Id.* Even if a claimant

7

is so impaired, the agency considers, at step five, whether she possesses the sufficient residual functional capability to perform other work in the national economy. *See Id.* Wall v. Astrue, 561 F.3d 1048, 1052 (10th Cir. 2009). The ALJ decided this case at step five of the analysis, finding that sufficient jobs existed in the national economy to allow plaintiff to work. At step five, the ALJ must consider a claimant's RFC, age, education, and work experience to determine if other work exists that a claimant is able to perform. Williams v. Bowen, 844 F.2d 748, 751 (10th Cir. 1988). If the claimant can adjust to work outside of her past relevant work, the ALJ shall enter a finding that the claimant is not disabled. 42 U.S.C. § 423(d)(2)(A). However, the ALJ must find that a claimant is disabled if insufficient work exists in the national economy for an individual with the claimant's RFC. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010). The Commissioner bears the burden to present sufficient evidence to support a finding of not disabled at step five of the review process. Emory v. Sullivan, 936 F.2d 1092, 1094 (10th Cir. 1991).

The Court may not reweigh the evidence or substitute its judgment for that of the ALJ but, instead, reviews the record to determine if the ALJ applied the correct legal standard and if his decision is supported by substantial evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." O'Dell v. Shalala, 44 F.3d 855, 858 (10th Cir. 1994). "A decision is not based on substantial evidence if it is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence supporting it." Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004). The Court must meticulously examine the record as a whole and consider any evidence that detracts from the Commissioner's decision. Washington v. Shalala, 37 F.3d 1437, 1439 (10th Cir. 1994).

Plaintiff argues that the ALJ's hypothetical questions and RFC assessment do not adequately reflect all of plaintiff's impairments and limitations. Dkt. # 28, at 4. The fault in the hypothetical questions and RFC assessment, plaintiff asserts, makes them invalid and unable to serve as the basis for a determination of disability. Id. at 6. Plaintiff also objects to the ALJ's determination that plaintiff's testimony was not credible, stating that his findings were not linked to substantial evidence. Id. at 10.

A. Hypothetical Questions and RFC Assessment

Plaintiff argues that the ALJ's RFC assessment and hypothetical questions to the VE are fatally flawed because they do not reflect all of plaintiff's limitations, and specifically they do not reflect limitations on her ability to: sit, stand, or walk; use her right shoulder and arm; and maintain concentration, persistence, or pace. The Court will review each of these in turn to determine if the ALJ's findings are supported by substantial evidence in the record.

Plaintiff asserts initially that it is error for neither the RFC assessment nor the first hypothetical question to include, categorically and explicitly, plaintiff's sitting, standing, or walking limitations.[2] She argues that the hypothetical questions and the RFC assessment must contain a discussion of these and other specific limitations, rather than using only exertional categories, citing as support <u>Alexander v. Barnhart</u>, 74 F. App'x 23, 28 (10th Cir. 2003),[3] and <u>Jesse v. Barnhart</u>, 323

---

[2] Plaintiff's argument relates only to the initial hypothetical question asked of the VE. However, the ALJ asked the VE a series of hypothetical questions, and the Court will discuss plaintiff's contention in the context of the entire series.

[3] Unpublished decisions are not precedential, but they may be cited for their persuasive value. <u>See</u> FED. R. APP. 32.1; 10TH CIR. R. 32.1.

9

F. Supp. 2d, 1100, 1110 n.49 (D. Kan. 2004). Even assuming this requirement,[4] plaintiff's cases are factually distinguishable from the case at bar. In both Alexander and Jesse, the ALJ described the claimants' relative abilities solely by reference to exertional categories and nothing else. Alexander, 74 F. App'x at 28; Jesse, 323 F. Supp. 2d at 1109-10. In this case, the opposite is true. With regard to the hypothetical questions posed to the VE, although the first hypothetical question did not discuss plaintiff's movement limitations, the second asked the VE to "assume two hours walking, standing in an eight hour day, sitting six hours, walking, standing in an eight hour day." Id. at 81. The VE testified that, even with those limitations, there remained sufficient jobs in the national economy to preclude granting benefits. Id. at 82. In making the RFC assessment, the ALJ credited the physical consultative examination, including the physician's conclusion that "[plaintiff's] gait was normal and she was observed to move at an appropriate speed without the use of an assistive device. Toe and heel walking were noted to be normal bilaterally." Dkt. # 14-2, at 26. Likewise, the

---

[4] The Court can find no mandatory precedent dictating such a result. Both Alexander and Jesse cite to Social Security Ruling 96-8p as the source for their requirements. Alexander, 74 F. App'x at 28; Jesse, 323 F. Supp. 2d at 1109. The ruling, noting that the RFC is "a function-by-function assessment," states that "[a]t step 4 of the sequential evaluation process, the RFC must not be expressed initially in terms of the exertional categories." SSR 96-8p, 1996 WL 374184, at *3 (July 2, 1996) (emphasis added). However, it also states that "[a]t step 5 of the sequential evaluation process, [the] RFC must be expressed in terms of, or related to, the exertional categories." Id. (emphasis added). It is unclear whether the RFC assessment in the ALJ's findings was the step four or step five RFC, although the fact that the ALJ decided the case at step five, see Dkt. # 14-2, at 31, implies that the stated RFC was the RFC used at step five. Moreover, the ruling only requires "that adjudicators consider the [strength capacities]" of claimants, without requiring that the ALJ make their consideration formally explicit. Id. at *5. Cases like those cited by plaintiff tend to arise when the ALJ simply makes no finding about these functions whatsoever. See, e.g., Payne v. Comm'r of Soc. Sec., No. C 12–04909 WHA, 2013 WL 6623347, at *4 (N.D. Cal. Dec. 16, 2013); Morris v. Astrue, No. 6:10–1786, 2011 WL 6955888, at *8-9 (D.S.C. Nov. 10, 2011). The situation here is quite different, in that the ALJ included the requisite findings in his report, but did not set them out explicitly in the RFC assessment.

ALJ gave great weight to the opinions of the DDS consultants, including "[t]he opinion that the claimant could ... sit and stand up to 6 hours in an 8 hour workday." Id. at 29. Thus, the ALJ gave appropriate consideration to plaintiff's ability to sit, stand, and walk when posing his hypothetical question and formulating the RFC, and his conclusion about her abilities in those areas is supported by substantial evidence in the record.

Plaintiff next argues that the ALJ failed to properly consider plaintiff's shoulder limitations in the RFC assessment and in the hypothetical questions to the VE. Specifically, plaintiff contends that the ALJ's limitations related to plaintiff's shoulder--inability to climb ropes, ladders, or scaffolds; only occasional overhead reaching with the right arm; and a ten-pound grip strength limit for the right hand, Dkt. # 14-2, at 23--are not supported by substantial evidence because the consultative examiner found plaintiff's shoulder movement limited in directions other than overhead reaching.[5] Dkt. # 14-7, at 53. The ALJ discussed the results of the physical consultative exam, including the physician's finding of "no difficulty in [plaintiff's] extremities except for her right arm at the shoulder joint, which was limited due to pain." Dkt. #14-2, at 26. He gave little weight to the opinion of the DDS consultants with regard to plaintiff's upper extremity mobility because they provided no limitations in that area; he found that "evidence supports greater limitations than opined by DDS." Id. at 29. As those two medical opinions constitute all of the medical evidence in the record about plaintiff's ability to reach with her right arm, it is not possible to say that the RFC

---

[5] The consultative examiner examined plaintiff's shoulder movements in terms of degrees of motion. His findings are as follows: Right In Supination, 100 degrees (normal is 150 degrees); Right Forward Elevation, 120 degrees (normal is 150 degrees); Shoulder Adduction Right, 30 degrees (normal is 30 degrees); Right Internal Rotation, 30 degrees (normal is 80 degrees); Right External Rotation, 40 degrees (normal is 90 degrees). Dkt. # 14-7, at 53.

assessment is not based on substantial evidence in the record. Because each hypothetical question the ALJ asked included an overhead reaching limitation at least equal to the one in the RFC assessment, the hypothetical questions are not in error. Qualls v. Apfel, 206 F.3d 1368, 1373 (10th Cir. 2000) (citing Gay v. Sullivan, 986 F.2d 1336, 1341 (10th Cir.1993)) ("The ALJ propounded a hypothetical question to the VE that included all the limitations the ALJ ultimately included in his RFC assessment. Therefore, the VE's answer to that question provided a proper basis for the ALJ's disability decision."). Thus, the Court finds no error in the ALJ's consideration of plaintiff's shoulder limitation.

Finally, plaintiff challenges the hypothetical questions and RFC as not truly reflecting plaintiff's mental limitations of concentration, persistence, or pace, as demonstrated in the consultative examinations. Dkt. # 28, at 3. "Concentration, persistence, or pace," is one of the four broad categories of functional limitation analyzed in the psychiatric review technique (PRT), which is used at steps two and three of the five-step determination process. See SSR 96-8p, 1996 WL 374184, at *4 (July 2, 1996) ("The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process."). However, the limitations found as part of the PRT are then reconceived as functional assessments in the Mental Residual Functional Capacity Assessment (MRFCA), and it is these functional assessments that the ALJ can use to arrive at the RFC assessment. SSR 96-8p, at *4. There does not need to be a specific correlation between the PRT and the MRFCA, as long as the two are consistent. See Heinritz v. Barnhart, 191 F. App'x 718, 721 (10th Cir. Aug. 10, 2006) (finding no error where plaintiff had

"marked" difficulty with concentration, persistence, or pace on PRT but no significant limitation for seventeen of twenty functional assessments on the MRFCA).

Here, the same examiner completed both the PRT and the MRFCA. Compare id. at 64, with id. at 80. The examiner identified plaintiff as having a moderate degree of limitation in maintaining concentration, persistence, or pace. Dkt. # 14-7 at 74. Plaintiff's MRFCA states moderate limitations in her ability to understand and remember and to carry out detailed instructions, as well as a marked limitation in her ability to interact with the general public. Dkt. # 14-7, at 78-79. Both the hypothetical questions to the VE and the RFC assessment follow from the MRFCA's conclusion: plaintiff can understand and carry out simple work instructions and make simple work decisions; plaintiff can interact with coworkers and supervisors; but plaintiff's anxiety precludes all but occasional interaction with the public. Compare Dkt. # 14-2, at 23-24, 78-79, with Dkt. # 14-7, at 80.

Plaintiff's argument seems to be that the RFC assessment and hypothetical questions cannot be correct because other evidence in the record, including in the reports of the two consultative examiners, could suggest greater limitations. Plaintiff cites several cases for the general proposition that failure to account for a limitation in a hypothetical question or RFC assessment will invalidate the ALJ's decision. E.g. Miranda v. Barnhart, 205 F. App'x 638, 643 (10th Cir. Aug. 11, 2005). An ALJ can rely on the conclusion of the MRFCA in arriving at the RFC assessment and hypothetical questions, just as an ALJ can rely on consultative examinations. Jeffries v. Soc. Sec. Admin., 358 F. App'x 25, 32 (10th Cir. Dec. 22, 2009); see also Jimison ex rel. Sims v. Colvin, 513 F. App'x 789, 793-94 (10th Cir. Mar. 21, 2013) (stating that ALJ need not include limitations in an RFC assessment when the MRFCA and consultative physician agreed the limitation was not present);

Gonzales v. Colvin, 515 F. App'x 716, 719 (10th Cir. Feb. 19, 2013) (finding no error where ALJ gave great weight to a non-examining physician's report). Moreover, the ALJ referenced, and occasionally quoted, plaintiff's discussion of her psychological symptoms with each of the consultative examiners, Dkt. # 14-2, at 26, 27-28, showing that he did consider the evidence plaintiff promotes in her motion when he assessed the RFC and framed the hypothetical questions. The Tenth Circuit has stated that "[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing Zoltanksi v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). While a different ALJ may have assigned plaintiff a greater limitation in the RFC assessment and hypothetical questions, the Court finds this ALJ's decision supported by substantial evidence in the record.

### B. Credibility Determination

Plaintiff argues that the ALJ's credibility determination regarding plaintiff was not supported by substantial evidence and did not include "even the minimal discussion of the credibility factors required." Dkt. # 28, at 10. The magistrate judge found that the ALJ had linked his determination to substantial evidence in the record, giving no reason to displace the ALJ's finding. Dkt. # 25, at 9. "'Credibility determinations are peculiarly the province of the finder of fact, and [the court] will not upset such determinations when supported by substantial evidence.' However, '[f]indings as to credibility should be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings.'" Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995) (citations omitted). In making the determination, the ALJ must do more than "simply recite[] the general factors he considered and then sa[y] the claimant was not credible based on those factors," but a

14

"formalistic factor-by-factor recitation of the evidence" is not needed. Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Rather, the ALJ must only "set[] forth the specific evidence he relies on in evaluating the claimant's credibility." Id.

The ALJ's decision provides the reasoning and evidence that he relied upon in making his credibility determination. He concluded that plaintiff did have physical and psychological impairments, but he determined that her statements about "the intensity, persistence, and limiting effects" of the impairments were not credible to the extent they contradicted the objective medical records. Dkt. # 14-2, at 24-25. In finding that there was "virtually no medical evidence" supporting plaintiff's statements about the existence of a physical impairment as of December 1, 2009, he extensively cited to and quoted from plaintiff's medical and mental health records, as well as the reports from the consultative examinations. Id. at 26. The ALJ undertook the same examination of evidence with regard to plaintiff's psychological impairments. He discussed plaintiff's mental health records in detail, including her statements upon intake as well as statements to and reports from different counselors. Id. at 27. He eventually determined that these records "fail[ed] to reflect the level of anxiety or hopelessness about which the claimant testified." Id. He then reviewed and summarized the examination and evaluation of the psychological consultative examiner, and he appeared to credit the examiner's conclusion about plaintiff's condition. Id. at 27-28. He concluded by identifying specific aspects of plaintiff's testimony that he found not credible, including: her contention of a sustained work history; her statements about past drug use; her willingness to seek disability status while accepting unemployment; and her statements about her anxiety levels and her hallucinations. Id. at 28-29.

The Court finds that the ALJ's conclusions about plaintiff's credibility are supported by substantial evidence from the record. Plaintiff argues that the ALJ's finding regarding her work history could not be based on substantial evidence because he elicited no testimony from her on the subject. Dkt. # 28, at 10. While the ALJ has a duty of inquiry when an issue is apparent on the record but not developed, see Maes v. Astrue, 522 F.3d 1093, 1097 (10th Cir. 2008) (citing Grogan v. Barnhart, 399 F.3d 1257, 1263-64), the record had been developed here. The ALJ possessed a detailed breakdown of plaintiff's wages from 1996 through 2011, Dkt. # 14-5, at 14-19, which he referenced without citation in his findings. Dkt. # 14-2, at 28. The ALJ's conclusion on this topic is supported by substantial evidence.

Plaintiff also argues that the ALJ's credibility determination was flawed with regard to the level of hopelessness present in her medical records, the inconsistencies in her statements about drug use, and her acceptance of unemployment benefits while pursuing a disability claim. Dkt. # 28, at 11-12. Plaintiff points to facts in the record that could lead to a different conclusion from the one the ALJ reached. However, "'[t]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence.'" Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007) (citing Zoltanksi v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004)). This Court cannot and will not reweigh the evidence. Bowman v. Astrue, 511 F.3d 1270, 1272 (10th Cir. 2008).

Plaintiff's next contention is that the ALJ was mistaken when he found that plaintiff made contradictory statements about her hallucinations. The contention is well-founded, but it is insufficient to overturn the ALJ's entire credibility determination. Referencing the psychological consultative examination, the ALJ found that plaintiff "reported that she had been having what she

identified as audio and visual hallucinations for 11 years. A report of this history was not made to her treating psychiatrist." Dkt. # 14-2, at 29. As plaintiff points out, the consultative examiner recorded that plaintiff had experienced symptoms of mental conditions, not necessarily hallucinations, for eleven years. Dkt. # 14-7, at 60. However, the Court must look not simply to individual pieces of the analysis but instead to the entire credibility analysis as a whole. See Branum v. Barnhart, 385, F.3d 1268, 1274 (10th Cir. 2004) ("While we have some concerns regarding the ALJ's reliance on plaintiff's alleged failure to follow a weight loss program and her performance of certain minimal household chores, we conclude that the balance of the ALJ's credibility analysis is supported by substantial evidence in the record."). Other than this mistaken reference to the period of time that plaintiff reported hallucinations, the Court finds the ALJ's conclusions are supported by substantial evidence in the record, as demonstrated by his extensive discussion of and citation to that evidence. The ALJ's credibility analysis depended far more on the inconsistencies in plaintiff's statements about her drug use, her work history, and her physical and psychological limitations than on the period of time plaintiff had reported suffering from hallucinations. As noted above, the Court will not reweigh evidence and "substitute our judgment for that of the Commissioner." Hackett v. Barnhart, 395 F.3d 1168, 1173 (10th Cir. 2005) (citing Qualls, 206 F.3d at 1371). On that basis, the Court finds no reason to remand this case for failure to conduct a proper credibility analysis.

**IT IS THEREFORE ORDERED** that the report and recommendation, Dkt. # 25, is **accepted**, and the Commissioner's decision to deny plaintiff's application for disability benefits is **affirmed**. A separate judgment is entered herewith.

**DATED** this 17th day of September, 2014.

_Claire V. Eagan_
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE